## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DIANE GREENWAY,

          Plaintiff,

v.

MEGADYNE AMERICA, LLC,
RUTHANN SAVAGE, and
ZOUHIR ADLANI,

          Defendants.

Civil Action File No.

_____

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiff Diane Greenway ("Ms. Greenway" or "Plaintiff") files this Complaint against her former employer, Megadyne America, LLC ("Megadyne"), Ruthann Savage ("Savage") and Zouhir Adlani ("Adlani") (collectively "Defendants"), as follows:

## **STATEMENT OF CLAIMS, PARTIES, JURISDICTION, AND VENUE**

1.

This is an interference and retaliation claim brought pursuant to the Family Medical Leave Act, 29 U.S.C. 2601 *et seq*. ("FMLA"), and a disability discrimination claim brought pursuant to the violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA").

2.

Megadyne is a foreign limited liability company incorporated in North Carolina and with its principal place of business located at 11016 Granite Street, Charlotte, NC 28273.

3.

Megadyne also operates a facility at 1810 Satellite Boulevard, Suite 500, Buford, Georgia, 30518. Megadyne develops and manufactures power transmission belts, matched components and complete belt systems for a diverse range of applications.

4.

Megadyne may be served with process through its Registered Agent, Richard Blais, located at 3651 Peachtree Parkway, Suite E-369, Suwanee, GA 30024.

5.

Adlani is the General Manager at Megadyne's Buford, Georgia facility, and one of the decision-makers at issue in this case, with the power to hire and fire employees, supervise and control employee work schedules, determine employee rates of pay, and maintain employee records. Adlani did in fact terminate Ms. Greenway.

6.

Adlani may be personally serviced with process.

7.

Savage is the Human Resources Manager at Megadyne's Buford, Georgia facility, and one of the decision-makers at issue in this case, with the power to hire and fire employees, supervise and control employee work schedules, determine employee rates of pay, and maintain employee records.  Savage did in fact terminate Ms. Greenway.

8.

Savage may be personally served with process.

9.

Megadyne, Savage and Adlani were employers of Ms. Greenway as that term is defined by the FMLA.

10.

Ms. Greenway was an employee of Megadyne as that term is defined under the ADA.

11.

This Court has personal jurisdiction over the parties and subject matter jurisdiction over all claims asserted by Ms. Greenway.

12.

Venue is proper because the acts, events, and occurrences giving rise to Ms. Greenway's claims took place within this judicial district and division.

## FACTUAL BACKGROUND

### Ms. Greenway's Employment with Megadyne

13.

Ms. Greenway was employed by Defendants as a Quality Manager from January 2018 until her termination in October 2021.

14.

Ms. Greenway suffers from diagnosed disabilities related to hypertension hydration-related disorders that were communicated to and known by Defendants.

15.

As a result of her disabilities, Ms. Greenway suffered a hemorrhagic stroke on September 25, 2021.

16.

As a result of her stroke, Ms. Greenway was hospitalized from September 25, 2021 until September 30, 2021.

17.

Ms. Greenway was intubated and placed on a ventilator from September 25, 2021 until September 27, 2021.

18.

Ms. Greenway's stroke, hospitalization, and intubation caused her to miss her scheduled work shifts at Megadyne.

19.

Ms. Greenway's son texted her supervisor Adlani personally from her phone on September 25, 2021, to let Adlani know that she had been admitted to the hospital.

20.

Ms. Greenway's son remained in contact with Adlani throughout her hospitalization to keep her employer informed of the status of her health condition and care.

21.

Ms. Greenway was unable to speak while intubated and for several days after the ventilator tube was removed from her throat.

22.

On October 4, 2021, the first time that she was physically able to do so, Ms. Greenway contacted Megadyne's Human Resources Department, specifically Savage, to inquire about filing for FMLA leave to allow her time to recover and return to work.

23.

Ms. Greenway spoke with Adlani on October 5, 2021, when she once more reiterated her request for FMLA leave.

24.

Ms. Greenway followed up with Defendants on October 7, 2021 and informed

Megadyne that she would be meeting with her primary care physician on October 8, 2021, at Defendants' request, to obtain the medical information needed for FMLA leave certification.

25.

Throughout her appointments on October 8, 2021, Ms. Greenway was in constant contact with Savage and Adlani, keeping Adlani abreast of her efforts to obtain the required FMLA certification from her doctor.

26.

At no time did Defendants tell Ms. Greenway that her job was in jeopardy.

27.

Defendants, however, terminated Ms. Greenway on October 8, 2021, before she could provide Defendants with the FMLA certification paperwork Defendants had requested.

28.

Defendants terminated Ms. Greenway due to her known disability and to prevent her from exercising her rights under the FMLA as she had requested.

**CAUSES OF ACTION**

**COUNT I: FMLA INTERFERENCE AGAINST ALL DEFENDANTS**

29.

Plaintiff incorporates the foregoing numbered paragraphs as if fully restated

- 6 -

herein.

30.

Plaintiff was an eligible employee under the FMLA. 29 U.S.C. § 2612(a)(1)(D).

31.

Megadyne, Savage and Adlani are employers covered by the FMLA.

32.

The FMLA requires leave for a "serious health condition which makes the employee unable to do his/her job."

33.

Plaintiff was entitled to FMLA leave for treatment of a serious health condition, as well as any subsequent medical treatment, in late September and early October 2021.

34.

Plaintiff provided detailed information to Defendants regarding her need for FMLA throughout the course of her hospitalization and subsequent doctors' visits, including appointments during which she was instructed to file FMLA paperwork.

35.

Defendants then wrongfully interfered with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615 by terminating her employment on October 8, 2021.

36.

Defendants' interference with Plaintiff's rights under the FMLA was willful and committed with reckless disregard for her rights under the FMLA.

37.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, including, but not limited to, back pay and lost benefits, front pay or reinstatement, and attorneys' fees and costs of litigation.

38.

Plaintiff is also entitled to liquidated damages for Defendants' willful violations of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

**COUNT II: FMLA RETALIATION AGAINST ALL DEFENDANTS**

39.

Plaintiff incorporates the foregoing numbered paragraphs as if fully restated herein.

40.

Plaintiff was an eligible employee under the FMLA.

41.

Defendants are employers covered by the FMLA.

42.

Plaintiff was entitled to FMLA leave due to her serious health condition.

43.

Defendants retaliated against Plaintiff for exercising her rights under the FMLA in 2021 by terminating her while she was in the process of requesting FMLA leave.

44.

Defendants' actions were willful and committed with reckless disregard for Plaintiff's right to be free from discriminatory treatment for exercising her rights under the FMLA, specifically 29 U.S.C. § 2615.

45.

The effect of Defendants' actions has been to deprive Plaintiff of her job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to her election to use her FMLA benefits.

46.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, including, but not limited to, back pay and lost benefits, front pay or reinstatement, and attorneys' fees and costs of litigation.

47.

Plaintiff is also entitled to liquidated damages for Defendants' willful violations of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## (FUTURE) COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA AGAINST MEGADYNE

### 48.

Plaintiff incorporates the foregoing numbered paragraphs as if fully restated herein.

### 49.

Ms. Greenway suffers from physical impairments which substantially limit several major life activities.

### 50.

Ms. Greenway was a qualified person with a known disability who was still able to perform all essential functions and job duties with or without reasonable accommodation.

### 51.

Defendants were aware of Ms. Greenway's disability and terminated her because of her disability, in violation of the ADA, soon after she sought time off for treatment of her disability.

### 52.

Defendants failed to engage in the required ADA interactive process with Ms. Greenway to allow her to obtain a reasonable accommodation for her disability.

### 53.

Defendants perceived Ms. Greenway as having a disability that substantially

limited her in connection with one or major life activities and terminated her for the same.

54.

Defendants' violations of the ADA caused Plaintiff to suffer lost income and benefits, lost opportunities for advancement, lost retirement benefits, mental and emotional distress, pain and suffering, costs and attorneys' fees, and other damages for which Megadyne is liable.

55.

Ms. Greenway has contemporaneously filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA by Megadyne.  Defendants have refused to resolve this matter outside of litigation, making conciliation impossible.  Plaintiff will amend her complaint upon receipt of her Right to Sue Notice from the EEOC to fully assert this Count III.

**<u>JURY DEMAND</u>**

Plaintiff demands a jury trial on all claims so triable.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1.   Award Plaintiff back pay from October 8, 2021 through the date of judgment;

2.   Award Plaintiff front pay for the diminution of Plaintiff's future earnings;

- 11 -

3.      Award Plaintiff liquidated damages for all claims where such damages are authorized;

4.      Award Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon her by Defendants' unlawful and discriminatory acts, including her pain and emotional distress;

5.      Grant Plaintiff injunctive relief requiring Defendants to reinstate Plaintiff to her position, with no interruption in service, including credit for years of service, pension, etc., or finding reinstatement is not feasible, order that Defendants pay Plaintiff front pay;

6.      Award pre- and post-judgment interest at the maximum rates allowable by law;

7.      Award special damages for all out-of-pocket costs and expenses that Plaintiff would not have incurred but for the actions of Defendants' unlawful conduct, including costs incurred in bringing this action and her reasonable attorneys' fees; and

8.      Grant such other additional relief as this court deems necessary, appropriate, proper, or just.

Respectfully submitted: February 4, 2022.

*/s/ M. Travis Foust*
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
75 14th Street, N.E., 26th Floor
Atlanta, Georgia 30309
T: (404) 873-8000
F: (404) 873-8050

*Counsel for Plaintiff*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and point selections approved by the Court in L.R. 5.1(B).

Respectfully submitted: February 4, 2022.

*/s/ M. Travis Foust*
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com
